UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| V Shred, LLC, | Case No. 2:25-cv-01341-CDS-DJA |
| Plaintiff | **Order Granting in Part Defendant's Motion to Dismiss** |
| v. | |
| Matthew Scott Kramer, | [ECF No. 14] |
| Defendant | |

This is a false advertising action under the Lanham Act, 15 U.S.C. § 1125, brought by plaintiff V Shred LLC against defendant Matthew Scott Kramer[1] and Doe and Roe defendants. *See* Compl., ECF No. 1. Kramer moves to dismiss this action, arguing that the plaintiff has failed to state a claim because the statements identified by V Shred are neither false nor actionable. *See* Mot. to dismiss, ECF No. 14. V Shred opposes the motion, arguing it has properly stated a claim against the defendant and argues the motion to dismiss should be denied because it is based entirely on extrinsic evidence that cannot be considered by the court. *See* Opp'n, ECF No. 18. The motion is fully briefed. Reply, ECF No. 22. For the reasons herein, I grant in part the defendant's motion to dismiss.

I.    **Background**

V Shred is a health and wellness company, specializing in "online exercise training programs, exercise apparel, and nutritional supplements." ECF No. 1 at 1, ¶ 1. Kramer is a social media influencer who promotes "online exercise training programs, exercise apparel, and nutritional supplements" and directly competes with V Shred. *Id.* at 2, ¶¶ 2–3. Kramer's social media presence is significant, with millions of followers on TikTok, YouTube, and Instagram. *Id.* at 4, ¶ 23. V Shred contends that Kramer created an online controversy by "publicly picking a

_____

[1] Kramer's motion asserts that he recently changed his name to Scotty Flynn Knox. ECF No. 14. However, because Kramer is alleged in the complaint, the court uses "Kramer" throughout this order.

fight with" them. *Id.* at 2, ¶ 4. V Shred alleges the fight is "one-sided," and that Kramer uses the catch phrase "Fuck V Shred" on his social media profiles using that phrase as "a discount code consumers can use" for products promoted by Kramer. *Id.* at 2, ¶¶ 5–6; *see also id.* at 5, ¶ 26. V Shred alleges that Kramer "always uses that catchphrase to disseminate false information about V Shred and otherwise disparage it," *id.* at 5, ¶ 27, and that Kramer has "made a career out of spreading false and malicious lies about V Shred," amongst other alleged nefarious conduct. *See id.* at 2, ¶ 7; 5, ¶ 27; 6 at ¶¶ 28–29; 7 at ¶¶ 30–31; 9–11.

V Shred alleges Kramer made false statements four different times. *See id.* at 9–12. First, V Shred alleges that the defendant appeared on a podcast episode of "Thinking with a Pump" on October 3, 2024, during which Kramer stated, "if you're not a dietician or a registered nutritionist, you should not be prescribing meal plans," and further stated that providing meal plans without a nutritionist or dietician is "not legal, but they [meaning V Shred] do it anyway." *Id.* at 9, ¶ 34. V Shred contends this was the defendant "squarely accus[ing] V Shred of engaging in illegal conduct." *Id.*

Second, V Shred alleges that on October 10, 2024, Kramer uploaded a TikTok video titled "*Mini Golf With V Shred in Las Vegas.*" *Id.* at 10, ¶ 39. The video depicted Kramer playing miniature golf in Las Vegas, which V Shred contends was false because V Shred was not present or in any way associated with the video. *Id.* V Shred alleges that the video implies V Shred endorses the defendant, which is materially false and impugns V Shred's credibility. *Id.* at ¶¶ 39–40.

Third, V Shred alleges that Kramer posted a video on his YouTube account on January 18, 2025, during which Kramer stated that "they only pay their coaches $9 per client." *Id.* at 10, ¶ 42. V Shred alleges this statement is false because they pay their coaches different amounts for different types of plans. *Id.* They also allege that the video suggests that V Shred underpays its workers, which harms V Shred's "goodwill and misleads [V Shred's] customers." *Id.* at ¶ 44.

Last, V Shred contends that on February 27, 2025, Kramer appeared on an episode of the "TSL Time" podcast. *See id.* at 11–12. During the podcast, Kramer falsely stated "the company of V Shred isn't owned by a health and wellness company. It's owned by a marketing agency. Just a bunch of marketing dudes." *Id.* at 11, ¶¶ 46–47. They further allege that during the episode Kramer "added context" to the allegations against V Shred by stating that V Shred "is a 'cancer,'" "sells 'crash diets,'" that "Sant is an 'actor' who 'doesn't know what the fuck he's talk about,'"[2] and that he plans to "knock the legs out from under [V Shred] because they are a garbage company." *Id.* at ¶ 48.

V Shred contends that Kramer's false and misleading statements constitute a violation of the Lanham Act, 15 U.S.C. § 1125. ECF No. 1 at 12. As relief, V Shred seeks several forms of relief, including but not limited to, a preliminary and permanent injunction against Kramer and his agents, employees, representatives, and all persons acting in concert with him, an order from the court requiring Kramer to engage in corrective advertising, and damages. *Id.* at 13.

## II.    Legal standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility

---

[2] V Shred is owned in part by Vince Sant, a health and wellness expert. *See* ECF No. 1 at 11, ¶ 47.

3

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**III.     Discussion**

The Lanham Act is a federal statute that governs trademarks and unfair competition. 15 U.S.C. § 1051, *et seq.* A defendant is liable under that act if they, "in connection with any goods or services, . . . use[] in commerce any . . . false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person  with another person." *Id.* at § 1125(1)(A).

To prove a Lanham Act violation, a plaintiff must establish: (1) a false statement of fact was made by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). To demonstrate "falsity," a plaintiff can either: (1) "show that the statement was literally false, either on its face or by

4

necessary implication," or (2) "that the statement was literally true but likely to mislead or confuse consumers." *Id.* (citing *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (9th Cir. 1993). The Ninth Circuit has held that representations can constitute commercial advertising or promotion under the Lanham Act if they are:

> (1) commercial speech; . . . (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.[3]

*Coastal Abstract Serv. Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999). "[T]he Lanham Act encompasses more than blatant falsehoods. It embraces innuendo, indirect intimations, and ambiguous suggestions evidenced by the consuming public's misapprehension of the hard facts underlying an advertisement." *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 257–58 (9th Cir. 1995), *supplemented sub nom.*, *William H. Morris Co. v. Grp. W. Inc.*, 67 F.3d 310 (9th Cir. 1995) (quoting *Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 277 (2nd Cir. 1981) (internal quotation omitted).

Kramer argues that the complaint should be dismissed because each allegedly false statement is not actionable.[4] *See* ECF No. 14 at 4. The court addresses each statement in turn.

**A.  The October 3, 2024 podcast episode of "Thinking with a Pump"**

Kramer argues that his appearance on the podcast episode was neither an advertisement nor a promotion, and there are no allegations that Kramer made the statements in the complaint to "promote his own competing business." *Id.* at 5. Kramer first contends that his statements during the episode were a matter of opinion and therefore not actionable. *Id.* at 6. In response, V

---

[3] The second prong of the *Coastal* test was abrogated by the Supreme Court in *Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 136 (2014).

[4] As part of its argument, Kramer argues that the catchphrase "Fuck V Shred," is not actionable. ECF No. 14 at 4–5. The plaintiff does not dispute that the catchphrase is not actionable, but was included to explain how the defendant is disparaging V Shred for profit. ECF No. 18 at 16–17. Because the parties agree the catchphrase is not actionable, it is not addressed herein.

Shred cites time-stamped statements from the podcast episode to argue that Kramer suggested V Shred engages in deceptive practices while at the same time promoting his own business coaching. *See* ECF No. 18 at 22.

But none of the statements included in V Shred's opposition were included in the complaint and therefore cannot be considered here. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (explaining that courts cannot consider material outside the complaint when ruling on a Rule 12(b)(6) motion). Without more, I cannot find that these statements give rise to a Lanham Act violation, so the motion to dismiss as it relates to the "Thinking with a Pump" podcast statements are dismissed without prejudice and leave to amend.

**B.   The October 10, 2024 TikTok "*Mini Golf With V Shred in Las Vegas*" video.**

The sum and substance of V Shred's allegations regarding the October 10, 2024 TikTok video is that it depicted Kramer playing miniature golf in Las Vegas and was titled "*Mini Golf with V Shred in Las Vegas.*" Kramer argues that this is simply insufficient to constitute a § 43(a) claim under the Lanham Act. ECF No. 14 at 7. I agree. The plaintiff's argument that the "false association" was intended to capture attention for the defendant's brand and thereby promote the defendant's products is strained. ECF No. 18 at 16. V Shred cites two cases to support its argument: *Upper Deck Co. v. Panini Am.*, Inc., 469 F. Supp. 3d 963, 976 (S.D. Cal. 2020) and *Veve v. Corporan*, 977 F. Supp. 2d 93 (D.P.R. 2013). But both of those cases are distinguishable. *Upper Deck* involved the unauthorized use of Michael Jordon and *Veve* dealt with the unauthorized use of an image of the plaintiff's property in an advertisement. Here, there was no unauthorized use of an image, but rather there was merely a tagline reference to V Shred. The leap from using a tagline to arguing that it equates to promoting the defendant's products is not plausible. Here, as alleged, there were no products offered for sale and V Shred was not even discussed in the video. *See Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 951 (11th Cir. 2017) (finding speech was not commercial where the articles at issue did not "discuss any products for sale by [the defendant],"

and" only briefly mention[ed] his [medical] practice for context."). So this allegation is dismissed without prejudice and with leave to amend.

### C.  The "TSL Time" podcast[5]

As alleged, Kramer made two false statements during the podcast. First, he stated "the company V Shred isn't owned by a health and wellness company. It's owned by a marketing agency. Just a bunch of marketing dudes." ECF No. 1 at 11, ¶ 46. Second, V Shred alleges that Kramer's statement that V Shred has "1,200 or 1,300 complaints filed with the Better Business Bureau this past year alone," is false. *Id.* at ¶¶ 51–52. V Shred further alleges that Kramer made other disparaging comments during the podcast, such as calling V Shred a "cancer," that V Shred sells "crash diets," and that Sant is an "actor" "who doesn't know what the fuck he's talking about." *Id.* at ¶ 48.

Kramer argues that none of the statements made during a February 27, 2025 podcast episode of TSL Time are viable because none of the statements are "factual claims" nor part of an advertisement or promotion for Kramer's services. ECF No. 14 at 9–11. Kramer contends that the first false statement, regarding ownership, falls into the category of "non-actionable opinion." *Id.* at 9. As to the second alleged false statement, related to the Better Business Bureau (BBB) complaints, Kramer argues that the statement was not "verifiable fact," but rather an estimate "based on memory." *Id.* at 10.

In opposition, V Shred argues that Kramer, in fact, made false statements during the podcast, and that the episode was "peppered" with references to the defendant's own corporate sponsors, social media page, fitness coaching business, and a future corporate-sponsored event. *See* ECF No. 18 at 20–21. V Shred also argues that the defendant's statements about them were

---

[5] Kramer included a hyperlink to the podcast in his motion. *See* ECF No. 14 at 8 n.6. Because the podcast is referenced in the complaint, and because V Shred do not dispute the authenticity or accuracy of the video-link, the court considers it for purposes of this motion without converting it into one for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

"unethical" and "made with the express intention of comparing V Shred to [Kramer's] own ostensibly authentic and caring coaching approach." *Id.* at 21.

As pled, the complaint sufficiently alleges Lanham Act violations for the two TSL Time statements because both were demonstrably false statements of fact[6] by Kramer in what could be construed as a commercial advertisement about his own or other's products, the statements actually deceived or had the tendency to deceive a listener, the deception is material, in that it is likely to influence a purchasing decision, the statements were made via the internet (which is a facility of interstate commerce),[7] and V Shred has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant or by a lessening of the goodwill associated with its products. Accordingly, the motion to dismiss based on the TSL Time podcast episode is denied.

**D.   "*Here's Why*" YouTube video[8]**

Kramer does not dispute that, as alleged in the complaint,[9] during the January 18, 2025 "*Here's Why*" YouTube video, Kramer discussed the reasons he hates V Shred and its owner, and during the episode Kramer stated that "[a]llegedly, [V Shred] also only pay their coaches $9 per client." ECF No. 14 at 7. Kramer contends, however, that this statement does not form a viable claim because V Shred's allegations fail to demonstrate that the statement is false, and it was prefaced with the qualifier "allegedly." *Id.* at 8.

In opposition, V Shred argues that it properly alleged a violation based on Kramer's false statement that V Shred only pays its coaches $9 per client. *See* ECF No. 18 at 19–20. It further argues that the entirety of the "*Here's Why*" video is an advertisement for Kramer's coaching

---

[6] Kramer's argument that the statement was "an estimate based on memory" is essentially an admission that the BBB statements were indeed demonstrably false. *See* ECF No. 14 at 10.

[7] *See United States v. Sutcliffe*, 505 F.3d 944, 952 (9th Cir. 2007) (the "use of the internet is intimately related to interstate commerce.").

[8] Kramer also included a hyperlink to this video in its motion. *See* ECF No. 18 at 7 n.5. I consider this video for the same reasons I considered the TSL podcast episode. *See supra*, n.7.

[9] ECF No. 1 at 10–11, ¶¶ 42–45.

services, in which he spends 58 of the 93-second video criticizing V Shred before promoting his own company and attempting to recruit customers. *See* ECF No. 18 at 18–19.

As a threshold matter, I do find that the video constitutes an advertisement. Throughout the video, Kramer appears in branded material or nearly branded apparel, and at its conclusion he uses the preceding content, a significant amount of which is dedicated to disparaging V Shred, to recruit customers in direct competition with the plaintiff, claiming he will pay his coaches "double the market standard." *Compare G.U.E. Tech, LLC v. Panasonic Avionics Corp.*, 2016 WL 6138422, at *6 (C.D. Cal. Feb. 4, 2016) ("G.U.E. has failed to plead" any fact "suggesting that it and PAC were actually competitors in any relevant market, so PAC cannot be 'a defendant who is in commercial competition with the plaintiff.'"). Further, Kramer's argument that V Shred failed to demonstrate that the statement at issue was false is unavailing, as V Shred is only required to plead sufficient facts to state a plausible claim. *Twombly*, 550 U.S. at 570. V Shred has met its burden here: it plainly alleges that at the time the statement was made, it was false. *See* ECF No. 1 at 10, ¶ 44. Finally, Kramer offers no authority supporting his position that his "allegedly" qualifying statement, without more, is sufficient to warrant dismissal at the pleading stage. Consequently, the defendant's motion to dismiss the "*Here's Why*" video and related allegations is denied.

## IV.   Conclusion

IT IS HEREBY ORDERED that the defendant's motion to dismiss **[ECF No. 14] is GRANTED in part, without prejudice and with leave to amend**, as set forth in this order.

IT IS FURTHER ORDERED that if V Shred, LLC elects to file a first amended complaint, it has until April 17, 2026, to do so, and to title it as such.

Dated: April 1, 2026

_____
Cristina D. Silva
United States District Judge